IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| DONNIE STANDLEY, | CV-21-00022-GF-BMM |
| Plaintiff, | |
| vs. | ORDER |
| DEVERA and TILLMAN, | |
| Defendants. | |

The following several motions remain pending before the Court: Defendants' Motion for Summary Judgment (Doc. 30); Plaintiff's motion for summary judgment (Doc. 47); Defendants' Motion for Judgment on the Pleadings (Doc. 51); Plaintiff's Motion to Compel (Doc. 57); Defendants' Motion to Strike (Doc. 61); and Plaintiff's Motion to Stay (Doc. 46). The Court disposes of these motions as follows.

## I. Factual and Procedural Background

Plaintiff Donnie Standley is a convicted state prisoner currently incarcerated at Crossroads Correctional Center ("CCC") in Shelby, Montana. The Court screened his initial Complaint, filed March 3, 2021, and determined that it stated one cognizable federal claim. (Doc. 2.) The Court ordered the Complaint served on the two defendants in this action, Mary DeVera and Carol Tillman, mail clerks at

CCC. (Doc. 7.) The viable claim was a possible First Amendment claim asserting interference with Standley's right to send and receive mail.

Standley filed an Amended Complaint on October 26, 2021, that attempted to revive one of his dismissed claims and added an additional claim for retaliation for filing the Complaint in this litigation. (Doc. 18.)

## II. Defendants' and Plaintiff's Cross-Motions for Summary Judgment

Defendants Tillman and Devera move for summary judgment on Standley's claim that they have unconstitutionally interfered with his right to send and receive mail. Standley has filed his own motion for summary judgment. The Court construes this motion as his response to Defendants' motion. (Doc. 47.) Standley concludes his brief by saying that Defendants' Motion should be denied and that "[b]oth Defendants and Plaintiff should be given the opportunity to make there [sic] arguments before a Jury. Let the facts be decided by and by." (Doc. 48 at 13.) Defendants also filed a combined reply and response brief. (Doc. 53.)

The gravamen of the dispute between the parties is whether Defendants properly rejected mail to Standley that had adhesive stamps. CCC is contractually bound to follow the State of Montana Department of Corrections ("DOC") policies and procedures. (Docs. 31 at 7; 32 at 3.) According to DOC Policy 3.3.6.III(4), Inmate Mail remains subject to the following requests:

> All incoming correspondence from the public cannot have any address labels, stickers, purchased postage stamps on any part of the mail. All

2

mail must be sent with a pre-stamped envelope or USPS meter stamp indicating it was mailed directly from the USPS; exceptions maybe [sic] allowed *(e.g., international mail, and mail from businesses or institutions)*. Any mail in violation of this policy will be returned to the sending party without notice to the inmate….

(Doc. 33-3 at 3.)

Further, DOC 3.3.6.IV(5) adds:

To address the potential for contraband to be concealed in adhesives, facilities may adopt procedures to implement protocols that may include one or more of the following: a. postage on incoming general correspondence must be in the form of postage from the United States Postal Service postal meter or an envelope with preprinted postage; [….] d. staff will cut off or otherwise remove stamps or other items adhered to incoming general correspondence; or e. general correspondence with adhesives will be addressed on a case-by-case basis.

(Doc. 33-2 at 4.)

After August, 2019, Defendants Tillman and Devera returned to sender any incoming mail received with an adhesive label or stamp. (Doc. 33 at 3.) Initially the reason for the return was handwritten on the envelope. Eventually, Tillman adopted the process of affixing a label that advises the sender of the policy. (Doc. 33 at 4.) Standley contends that these practices have been used by Defendants to violate his First Amendment rights. (Doc. 48 at 2 – 3.)

## A.  Standard for Summary Judgment

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." The movant bears the initial

responsibility of informing the district court of the basis for its motion, and

identifying those portions of the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, which it believes demonstrate

the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986). A material fact is one that might affect the outcome of the suit

under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden, the non-moving party must

go beyond the pleadings and designate by affidavits, depositions, answers to

interrogatories, or admissions on file, "specific facts showing that there is a

genuine issue for trial." *Id*. The Court views the evidence in the light most

favorable to the nonmoving party and draws all justifiable inferences in the non-

moving party's favor when deciding a motion for summary judgment. *Id*. at 255

(1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir.

2007).

The Court addresses, as a preliminary matter, the various factual disputes

raised by the parties that it determines do not amount to material disputes that

would preclude summary judgment. The parties disagree about the interpretation of

a federal Bureau of Prisons ("BOP") standard. (Docs. 48 at 4; 50 at 5.) A BOP

standard may reflect pervasiveness of anti-adhesives policy. It proves irrelevant to

the specific issues and the *Turner* analysis conducted by the Court in this matter. The parties also disagree about whether CCC notifies senders of the policy (Doc. 48 at 11), and whether any other inmate complained about the mailroom policy. (Doc. 48 at 12.) These issues may be factual disputes between the parties, but they are not material to the following analysis. The Court will disregard them.

### B.  Analysis

Defendants assert that the mailroom policy that requires returning adhesive-stamped or labelled mail meets the test set forth in *Turn v. Safley*, 482 U.S. 78, 89–90 (1987).  (Doc. 31 at 6.) "[A] prison inmate retains those First Amendment rights that are not inconsistent with his [or her] status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Prisoners have "a First Amendment right to send and receive mail." *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam).

A regulation that impinges on First Amendment rights "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Prison regulations concerning incoming mail should be analyzed under the *Turner* factors. *See Thornburgh v. Abbott*, 490 U.S. 401, 411–13 (1989); *Witherow*, 52 F.3d at 265. In determining whether a prison regulation is reasonably related to a legitimate penological interest, the court should consider the following factors:

(1) whether there is a valid, rational connection between the regulation and the interest used to justify the regulation; (2) whether prisoners retain alternative means of exercising the right at issue; (3) the impact the requested accommodation will have on inmates, prison staff, and prison resources generally; and (4) whether the prisoner has identified easy alternatives to the regulation which could be implemented at a minimal cost to legitimate penological interests.

*Beard v. Banks*, 548 U.S. 521, 529 (2006). Courts give "substantial deference to the professional judgment of prison administrators" in the application of these factors. *Id.* at 528.

> 1. Whether there is a valid, rational connection between the regulation and the interest used to justify the regulation.

The adhesives policy, as stated in DOC Policy 3.3.6 quoted above, serves to "address the potential for contraband to be concealed in adhesives." Defendant Devera personally has observed contraband sent to CCC in the mail, including under adhesive labels. (Doc. 33 at 3.) Standley disputes this fact but has no evidence or testimony to support his disagreement. (Doc. 50 at 3.) Devera's sworn affidavit about her personal experience represents the only evidence on the point. The Warden of CCC, Pete Bludworth, filed an affidavit stating that "[h]iding contraband, particularly drugs, under labels has been a well-known source of introducing contraband into correctional facilities for decades. Additionally, fake labels have been used to make incoming mail look like it is coming into the facility from legitimate sources subject to less intrusive searches, such as alleged legal mail." (Doc. 34 at 2–3.)

No doubt exists that CCC has a legitimate penological interest in preventing the introduction of contraband of all types into its facility. *Turner,* 482 U.S. at 91. "A prison official's concern for prison security is entitled to significant deference." *Casey v. Lewis*, 4 F.3d 1516, 1521 (9th Cir. 1993). Standley does not dispute the need to exclude contraband, but rather, responds to this assertion by Defendants with various claims about the introduction of drugs in prisons and better methods to prevent it. (Docs. 48 at 5; 48-1 at 9.) Whether the policy provides the best, or only, method to achieve the particular security goal is not the question. "The inquiry is whether the justifications invoked for the policy are served by the policy, not whether a different policy would serve the asserted security interests. *Casey v. Lewis*, 4 F.3d 1516, 1521 (9th Cir. 1993). Further, "unguided substitution of judicial judgment for that of the expert prison administrators on matters such as this is inappropriate." *Bell v. Wolfish*, 441 U.S. 520, 554 (1979). The Court concludes that a rational connection exists between the interest in preventing contraband from entering CCC and the policy of disallowing adhesive materials on incoming mail. This factor weighs in favor of Defendants.

Standley raises the issue of CCC interfering with his legal mail, which involves different concerns and different prison policies. (Doc. 48 at 8–9.) Standley contends that the Court should deny Defendants' motion for summary judgment, even if the policy passes the *Turner* test, because Defendants rejected

legal mail and, according to Standley's father Roy, mail sent directly from the post office. (Doc. 48 at 7.) The documents identified by Standley as legal mail do not qualify. A letter from an academic at Montana State University does not constitute legal mail. (Docs. 48 at 11; 49 at 3; 53 at 3–4.) Mail from his father that includes legal mail is not legal mail. Items that mailroom staff return unopened due to adhesives also do not qualify as mailroom staff could not know that it included legal papers.

> 2.  Whether prisoners retain alternative means of exercising the right at issue.

"Where other avenues remain available for the exercise of the asserted right, [] courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation." *Turner v. Safley*, 482 U.S. 78, 90 (1987) (citations and internal quotations omitted.) Alternative means exist for prisoners to receive mail. (Doc. 34 at 3.) Inmates' correspondents can order prepaid envelopes over the internet, or they can take mail to the post office and have it metered. Standley identifies potential impediments and difficulties with these alternatives, but does not raise a viable dispute that presents an insuperable obstacle. (Doc. 50 at 3–4.) This factor weighs in favor of Defendants.

> 3.  The impact Plaintiff's requested accommodation will have on inmates, prison staff, and prison resources generally.

8

"When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Turner v. Safley*, 482 U.S. 78, 90 (1987). Essentially, the alternative proposed by Standley seeks to allow adhesives in mail.

Given the concern about contraband being smuggled under adhesives, the CCC mailroom staff would be required to assure that all adhesives were removed from envelopes before delivery to inmates, or use some other method to prevent any smuggled contraband from reaching an inmate. Warden Bludworth concludes that "[r]equiring mailroom staff remove adhesive stamps and labels requires additional staff resources and time, and may result in a delay in mail being distributed to prisoners." (Doc. 34 at 3.) The Court will defer to Warden Bludworth's consideration of the greater effort required to accommodate Standley's approach. This factor weighs in favor of Defendants.

> 4.  Whether the prisoner has identified easy alternatives to the regulation which could be implemented at a minimal cost to legitimate penological interests.

The absence of ready alternatives is evidence of the reasonableness of a prison regulation. *Turner v. Safley*, 482 U.S. 78, 90 (1987). By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns. *Id*. In this

particular context, analysis of this factor proves similar to the previous factor. If CCC chooses to return mail rather than spend time removing adhesives, there does not appear to be a "ready alternative" that would be less burdensome. Standley proposes that the jail go to email altogether. (Doc. 48 at 10; 48-1 at 10.) Email is not an "obvious, easy alternative" given the technological requirements and the needs for and challenges of access to computers for prisoners. This factor weighs in favor of Defendants.

### C.  Good faith defense

Defendants contend that they are entitled to summary judgment on their defense of good faith, that they followed the protocol required of them by CCC's contract with DOC, and therefore, they should not be liable if that protocol proves unconstitutional. (Doc. 31 at 12–15.) In the Ninth Circuit, "private parties may invoke a good faith defense to liability under section 1983." *Danielson v. Inslee*, 945 F.3d 1096, 1099 (9th Cir. 2019). The Court concludes that Defendants are entitled to summary judgment under the substantive law. The Court will not reach the question of their good faith defense.

## II.  Defendants' Motion for Judgment on the Pleadings

Defendants Devera and Tillman have moved for judgment on the pleadings regarding Counts I and III of Standley's Amended Complaint. (Doc. 52.)

### A. Standard for Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure provides as follows:

[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(c).

Judgment on the pleadings proves appropriate "when there are no issues of material fact, and the moving party is entitled to judgment as a matter of law." *3550 Stevens Creek Assocs. v. Barclays Bank*, 915 F.2d 1355, 1357 (9th Cir. 1990). The court reviews the pleadings only, accepting the allegations of the non-moving party as true when considering a motion for judgment on the pleadings. *See Hal Roach Studios, Inc. v. Richard Feiner and Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989); *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 882 (9th Cir. 2011). A motion for judgment on the pleadings is functionally identical to a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6). *Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011). The same legal standard applies. *Id*.

//

11

**B. Analysis**

Defendants have taken up the Court's prior notice that the fate of Claims I and III of the Amended Complaint would be considered only if properly presented by motion. (Doc. 44.)

    1.  Count I

Defendants correctly assert that Count I fails to state a claim upon which relief can be granted. (Doc. 52 at 4.) This Court previously dismissed Standley's claim regarding access to the courts. (Doc. 7.) Standley attempted to revive the claim in his Amended Complaint. (Doc. 41 at 3.) As explained in this Court's earlier Orders, however, until Standley can demonstrate that his litigating capacity has been damaged by Defendants' actions (or anyone's), he cannot state a claim. (Docs. 7 at 10–11; 44 at 4.)

Standley emphasizes in his response the facts related to the destruction of his legal documents, which allegedly occurred as far back as 2017 and as recently as March 17, 2021, after he filed his original Complaint in this action. (Doc. 56 at 3.) The Court already dismissed claims from 2017 as barred by the statute of limitations. As to the March 2021 loss, Standley asserts this was an act of retaliation. If so, it is an element of Count III, discussed below. The loss of his documents, if it did not affect his ability to litigate his petition in state court, does not state an independent claim. If he is eventually able to use the fact of the loss of

12

those documents to state a claim for a denial of access to the courts, he may do so. That claim does not stand before the Court at the moment. Standley asserts that the loss of his documents might be a theft, or otherwise actionable, but at this point, these claims are speculative and do not state a federal claim under § 1983. (Doc. 56 at 5.)

A related issue raised by Defendants' Motion to Strike asks the Court not to consider the document Standley filed with the caption "Second Information Notice of Second Count of Tampering with Prisoner Mail." (Doc. 59.) Standley subsequently filed a motion to amend that asks the Court to consider his notice as a motion. (Doc. 64.) This document asserts that Standley's tax return was never mailed by CCC, because it is not listed on the mail log provided by CCC in this matter. (Doc. 55.) Standley's document was filed by the Clerk of Court as a notice. The document did not represent an untimely motion to amend, or relate to the viable claim in this case, the policy of rejecting mail with adhesives.

Giving Standley the benefit of the doubt factually on this matter, the absence of one document from the mail log does not amount to a constitutional violation related to his claims in this Court. In the future, should he learn that he did not receive his tax refund (which appears to be an open question in his filing), he may determine if he has a federal cause of action related to that claim. The motion to

strike will be denied as unnecessary because the Court determines the disputed document itself is irrelevant to the instant matter.

>    2.  Count III

Count III of Standley's Amended Complaint alleges that a non-party to this action retaliated against him for filing this action. As explained in this Court's earlier order, the new claim against the proposed defendant, Kloos, did not "aris[e] out of the same transaction, occurrence, or series of transactions and occurrences" and no "question[s] of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2); Doc. 44 at 5–6. If Standley has a claim of retaliation related to the filing of this lawsuit, he must file that as its own independent action. The Court will grant Defendants' motion for judgment on the pleadings as to Counts I and III.

## IV. Plaintiff's Motion for Stay

Standley has sought to stay this matter pending resolution of his state action. (Doc. 46.) The motion will be denied. Standley's motion for a stay proves contingent on his belief that he retains a viable access to the courts claim. Standley seeks a stay in this court to await the ruling in his state court action as evidence for that claim. The Court previously concluded he does not currently state a claim for access to the court. The Court declines to await a future ruling in another court for Standley to ripen a claim. When and if he can state a claim for a denial of his

14

access to the Court, he should file that as its own action, not attempt to shoehorn the claim in here.

Accordingly, it is HEREBY ORDERED:

1. Defendants' Motion for Summary Judgment is GRANTED. (Doc. 30.)

2. Plaintiff's Motion for Summary Judgment is DENIED. (Doc. 47.)

3. Defendants' Motion for Judgment on the Pleadings is GRANTED. (Doc. 51.)

4. Defendants' Motion to Strike is DENIED. (Doc. 61.)

5. Plaintiff's Motion to Stay is DENIED. (Doc. 46.)

6. All other pending motions are denied as moot.

5. The Clerk of Court is directed to close this matter and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

6. The Clerk of Court is directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.

DATED this 3rd day of October, 2022.

Brian Morris, Chief District Judge
United States District Court

15